We are now ready for argument in our first case. Mr. O'Brien. May it please the Court. Steven O'Brien from Denton's U.S. on behalf of Medicine Shoppe to release its position and its claims in this case after a settlement agreement when the conditions for the release had not been met. Alternatively, the summary judgment motion granted by the trial court we believe was inappropriate given numerous, myriad, factual disputes of the evidence as to what documents had been executed and were required to be executed for the release under the settlement agreement and indeed whether some of the documents that had been executed were even authorized to be issued. Could I clarify a procedural point preliminarily? Certainly. Did anyone, has there ever been a motion to enforce the action brought for breach of settlement agreement? There has not. So right now we're still in, it's still a continuation of the initial conversion suit? Correct, Your Honor. So why, given the fact that there is a settlement agreement, would the district court not have been correct in finding that that resolved all of the matters in the conversion suit? The, because the release provision in the settlement agreement, there is a settlement agreement. The parties certainly agree on that. Right. But the release provision in the settlement agreement says certain events have to happen before the lawsuit is dismissed and before the claims are released. Right, but that goes to, and my question is why doesn't that go to performance of the settlement agreement as opposed to the termination of the conversion of the tort suit? Well, if the loss, if the claims have not been released, the lawsuit cannot be dismissed. So, which is the nut of the issue here. And I think that that is the disconnect between the district court and Mr. Siddiqui and our position. I think the district court is taking a look at this as if there was a conversion process to re-franchise these pharmacies, which would follow from the execution of certain documents, which is what triggers the release in this agreement and all necessary documents to effectuate the conversion of the pharmacies. That's what triggers the release. And the district court seemed to be saying that, that this was a ministerial act to sign a franchise agreement. The problem is there's more than just the franchise agreement that needed to be signed. There are other documents there. And rather than the documents being the start of a process, which then goes into whether a settlement agreement has been performed, the issue is the conversion of these pharmacies to being franchises culminates in the execution of documents and culminates with documents being provided. And so, until that process has occurred, the release does not kick in. And while there is a settlement agreement, the claims are not dismissed. The underlying claims don't go away until that release kicks in. And the conditions for that release kicking in simply have not been met. So the district court seemed to think that this is a ministerial act of just signing documents or assigning franchise documents, but there's quite a bit still missing here. In reality, and indeed the summary judgment evidence, which we submitted some 84 factual issues for the court to consider, establishes that the process culminates in the documents being executed, not that it's a ministerial act up front. So your agreement that the settlement or your argument below that the settlement agreement was executed speaks to that ministerial function and not compliance with the terms of the agreement? If I understand the court's question, I believe that's correct. Because you, in fact, demanded that the corporations execute the terms of the agreement. Absolutely. Absolutely. And our position is that that could not be done, still cannot be done, cannot be done, and thus the documents that are needed cannot be executed. And we believe that on a summary judgment standard that was before the trial court at the time, the evidence is pretty clear that that cannot be done. Although, as a procedural matter, the court invited the defendant in the case to file a summary judgment motion. We were not invited to file a cross-summary judgment motion. So I don't believe that the issue before this court is that it can grant the motion on what we believe to be fairly uncontested factual issues. But I think the issue is that this has to be remanded back to the district court to let him review the issues one more time. The four corners of the document, the settlement agreement alone, Your Honor, I think speaks to what documents had to be executed here. The settlement agreement, and again, the release provision in paragraph 4C, specifically says that upon execution of this agreement, the settlement agreement, and all necessary documents to effectuate conversion of the pharmacies. And I think the district court was thinking that all that has to be signed are franchise agreements, just the franchise agreements that are here. And Mr. Siddiqui, through Mr. Yusuf, claims that they sent franchise agreements. But the settlement agreement establishes that there's more to the process than that. In fact, paragraph 4A talks about that Siddiqui and the companies agree to convert the pharmacies and execute the franchise agreements. The process of conversion is more involved than just executing franchise agreements. Moreover, section 4B discusses what further is involved in that process, that is, buying inventory from a particular wholesaler, in this case, Cardinal Distribution, and that there is not only the franchise agreement involved, but there is a prime vendor agreement, which would be an agreement between Cardinal and the corporations or Mr. Siddiqui. Can you refer me to the page in the joint appendix? Certainly. 410 is where the settlement agreement is, Your Honor. Thank you. Sure. And then 411 is where paragraph 4C is. That's the release provision. So, the all necessary documents that had to be executed here were far more than just the franchise agreement alone. There was quite a bit more that had to be established. And the summary judgment evidence establishes, Your Honor, and I don't believe it is disputed, I think our facts were submitted and the defendant in the case did not submit any counter facts to contest them, that what has to happen when Mr. Siddiqui died and a new owner is supposedly coming in is that there has to be a credit application from that new owner to allow Medicine Shop to evaluate the new owner. No such credit application has been provided. Now, there's a good reason why that is. Mr. Yusuf, the supposed new owner now, has been in fights with Medicine Shop for a long time, filed for bankruptcy. He can't possibly get credit from Medicine Shop and knew better and didn't fill out a credit application. But there's also Federal Trade Commission regulations that go into the establishment of a franchise. We have to supply what's known as a franchise disclosure documents. The Federal Trade Commission requires these documents. And when a new owner comes in, such as Mr. Yusuf in replacing Mr. Siddiqui, we had to redisclose the new owner. That process has never been done. The summary judgment evidence clearly establishes that that process was not done. There was no prime vendor agreement ever signed. There wasn't even a prime vendor agreement that was portrayed by Mr. Siddiqui or Mr. Yusuf as coming across the table to our side to consider it. That's a document that needs to be executed for the conversion of the pharmacies, for the release to kick in, and that document has never been provided. While Mr. Siddiqui or Mr. Yusuf claim that they provided all the documents to us, the summary judgment record establishes that even at a ministerial level, even if we keep this case at a ministerial level, which is where the district court may have been, numerous documents are missing. The franchise agreement that was signed and sent to us has a 90-day out term. It's only good for 90 days and then it can go away. The settlement agreement contemplated that the parties would sign up and we'd have these stores franchised for up to three years. What had to be signed to get to that termination was an amendment to the franchise agreements. No amendment has ever been provided to us to this day. As a factual matter, has Mr. Yusuf been operating the companies for a period of time? Apparently he is still operating the pharmacies. They're operated as independents. They're not operated as medicine shops. Is there any evidence in the record that he has ever been unwilling to perform the terms of the settlement agreement such as purchasing inventory, securing debt through a guarantor, etc.? I believe there is. Mr. Silberger may disagree with me, but the simple fact is he hasn't even tried. All the documents were sent to him. These are the documents you need to sign to execute. But apparently he has acted in a way that enables him to continue the operation of the pharmacy. Not as a franchise, but as an entity. But that has nothing to do with medicine shop. Correct. Right. But doesn't that speak against the assertion that he would not be able to purchase inventory, etc.? Well, he can purchase inventory from his wholesaler now, AmerisourceBergen, but my understanding is that that's based upon Mr. Siddiqi's credit that Mr. Yusuf never even applied to Amerisource or told AmerisourceBergen that Mr. Siddiqi had died. So I think Amerisource, at least at the point in time when we were presenting this on summary judgment, the wholesaler was operating under Mr. Siddiqi's credit application, not Mr. Yusuf's. And that's the whole problem here. This whole thing has been a charade by Mr. Yusuf to use somebody else's credit to get around problems that he has. And, you know, he'll sign whatever documents he thinks are necessary. Well, actually, more accurately, they seem to be problems you have because he seems to be continuing the operation of the corporations. Well, except that these were supposed to be franchised. Correct. Yes, I understand. And he isn't signing the documents that we need to franchise these stores. In fact, he seems to be doing facially what may be enough. He seems to present a bill of sale to acquire these stores from Mr. Yusuf that has a strange clause that they're null and void if the debts and obligations of Mr. Siddiqi aren't resolved. And there's no question in the record that the debts and obligations of Mr. Siddiqi were not resolved prior to those agreements. Yet they want to say the bills of sale are good. I don't understand how they're good. The explanation is, well, it's just a mistake. Just for clarification, whom would you contend is the actual owner of the companies? The estate of Mr. Siddiqi. Companies. And is there anything in the record about whether they have ever, whether the estate has ever asserted its claim or right to own these companies? There's no evidence in the record one way or the other. That's fine. So, state addenda haven't been provided. Amendments to the agreement haven't been provided. Prime vendor agreement hasn't been provided. Business associate records for HIPAA purposes haven't been provided. The medicine shop internet participation agreement hasn't been provided. All of these agreements were sent. And at the record, page 441, these documents were sent to Mr. Yusuf and Mr. Siddiqi long ago. In April, before Mr. Siddiqi died, the documents were provided. None of them have come back to us. So, even at a ministerial level, the summary judgment record is pretty darn clear here that nobody has met the standards to provide the documents necessary to effectuate the conversion of the pharmacies. And until that happens, there can't be a release. And until there's a release, the underlying claims still need to exist. And our view is that Mr. Yusuf, on behalf of Mr. Siddiqi, can't meet those conditions and that this matter needs to be tried. That's where this comes down to. All documents have not been executed. Defendants and Mr. Siddiqi, Mr. Yusuf, they're not in a position to claim that they can perform because they simply can't. They just don't have the wherewithal, the credit, to perform under Medicine Shop's requirements. They can't buy the inventory from Cardinal, which is what the settlement agreement required. And as such, these claims are simply not ripe for dismissal. Thank you. Thank you very much. And you have some time for rebuttal. Mr. Silbiger, did I pronounce that correctly? Yes, you did, Your Honor. Perfect. May it please the Court. Good morning, Your Honors. David Silbiger, representing the defendants in this matter. Obviously, we contest what counsel has stated. We believe that the district court correctly determined that there was a settlement and release agreement executed by all parties that's enforceable and effectively settled this lawsuit. Judge Bedard was very clear on that also. And I'm referring to his memorandum in order, Joint Appendix 674, when he clearly stated that all parties stipulated in open court that the settlement agreement submitted as Exhibit 1 to defendants' pre-hearing brief had been duly executed by both sides. It evidences a meeting of the minds and mutual consent among the parties with capacity. And there was consideration on both sides. Accordingly, the Court finds the settlement agreement is binding and effective. What's interesting to note, Your Honor, Your Honors, is that not only did the Court find the agreement, but counsel in two prior correspondence indicated the effectiveness of the agreement, which he now claims is not effective. I'm referring to Joint Appendix 456, where he sent an email to my office, and he said, We have a deadline with the Court of July 27th to report on the status of settlement. Now that we have a signed agreement, I need to know what the holdup is on your end with executing the documents. If we don't hear soon, we will be moving to enforce the settlement agreement now in place. So he indicated Aren't there clear conditions precedent to this settlement agreement being finalized, contained in Paragraph 4? Just signing the agreement doesn't complete the release such that the case should be dismissed, does it? What about Paragraph 4? Upon execution of this agreement, which is what you've just talked about, but there's more to it than that. It says, And all necessary documents to effectuate conversion of the pharmacies to its affiliates, blah, blah, blah. What about those? What about that? Well, it's the defendant's contention that they did execute what they needed to execute. Which was? The franchise documents, and also expressed a willingness to sign any other documents. And, Your Honor, if you would look at Joint Appendix 422, which is a letter from Sherry Hayman of my office, and it's on 423, she says to counsel, Please advise if I or my clients are required to take any further action at this time while we await fully executed copies of the franchise documentation and instructions concerning the remaining details to fully convert the two pharmacies. And it's at that point that the disconnect occurred. Right, because it says, While we await Instructions. While we await fully executed documents. Back from the appellate. In other words, we sent them to sign franchise agreements. They needed to sign the agreement, send it back to us, and then we would endeavor to do the conversion. At that point, they failed to sign the agreement. They failed to sign the franchise agreement. They failed to instruct what other documentation and actions needed to be taken to convert the pharmacies. After all, it's their franchise system. It's they that know what we need to do to convert into their system. So isn't this a disputed issue of fact? You both clearly disagree on this. No, because the language is clear and unambiguous, Your Honor. To you. Well, also to Judge Bedard, Your Honor. Well, he doesn't. It does appear as though you are contesting that the documents necessary to complete the full execution of the agreement are outstanding. Would you acknowledge that there are any documents outstanding? There are documents outstanding to complete the conversion, to execute in contemplation of the conversion. But if you read the language of the settlement agreement, it says we have to execute the documents. It doesn't say that the conversion has to be completed before the release. So you're drawing a line, as apparently the district court did, and which is tempting to do given the somewhat odd procedural posture of this case, between the settlement agreement as distinct from the steps necessary to convert the pharmacies to the franchise. That's correct. We believe that the actual process of converting is in furtherance of performance of the agreement,  except that there appears to be, from the provision, the release provision in the settlement agreement, a connection that the franchise agreement has to be accompanied by other documents. Actually, Your Honor, it says that, well, if you look at, there's C, D, and E. There's no question that- C says, and all necessary documents to effectuate conversion. Right. So it does appear that they are linked in the settlement and release agreement. It does, but what we're saying, Your Honor, is that the plaintiffs failed to cooperate at that point. It is a ministerial act. The documents just needed to be provided, and my clients would have signed them. That was the agreement. They would have acted in furtherance of the settlement agreement. And if you look at paragraphs D and E, it says here that upon execution of this agreement, there would be a release, which clearly this settlement agreement was executed. And then in E, it says upon execution of the franchise documents, there would be a release, which clearly occurred. There's no dispute the franchise documents were executed. And we would argue that, in fact, it was a furtherance of the performance that has failed to occur, and that was solely as a result of the acts of the plaintiffs in this case. That, in fact, you know, I'm looking, Your Honor, also, as the court, I'm sure, is aware, a case came out subsequent to our brief, Topuwala, in this court. It was an unpublished opinion at 12-2068. And there the court was very clear in referencing Cochran from Maryland, where it said, where the language is unambiguous, the court will not inquire into what the parties may have subjectively intended. And here we believe the language is very clear. What the plaintiff is saying they may have intended is contrary to the language. And the court also held there that with respect to relevant but nonessential terms, if they're silent, it won't destroy the settlement agreement. And these terms that we're talking about are in furtherance of the performance of this settlement agreement. My client has always been ready, willing, and able to comply with the settlement agreement. It's the plaintiffs that stopped cooperating. Once the initial documents were sent back, it's they that failed to sign the franchise agreement. The letter clearly said, if there's anything else you need us to do at this time, please advise us. If they were operating in good faith in furtherance of the settlement agreement, they would have said, hey, you need to do this, this, and this to complete this conversion. And they didn't do that. They just stopped. Then they want to argue before this court in their brief that we somehow breached this franchise agreement. But they never even signed the franchise agreement. And they're arguing to the court that we somehow are in breach of an agreement they never signed. And there's another instance where counsel indicated, during Appendix 671 on July 25th, he says here, Medigap does not relieve your corporate clients from their settlement obligations. Clearly the counsel believed there was a valid settlement agreement. He did it twice. He indicated there's a valid and binding settlement agreement. The terms are clearly not unfair. It's clear and unambiguous what's required. What's required is, number one, that my clients convert to Medigap, which my clients were clearly ready, willing, and able to do. Then there's the issue of purchasing the inventory from the cardinal, which is the parent of this company. And the settlement agreement clearly indicates that it's binding upon the related and affiliated business entities. I don't see how there can be an argument the cardinal may somehow then decide they don't want to sell to them, which apparently is also raised in their brief. But that being said, purchasing from cardinal is an issue of performance. That's to see whether my client will be able to do it, not whether the plaintiffs believe that my client won't be able to do it. Now my client also on the record made an agreement that they would allow for the money to be taken in advance from my client's bank account before any of the medicine is shipped. So there's no risk whatsoever upon cardinal in selling the medicine to my client. Secondly, they had agreed to post letters of credit for the franchise fees for the duration of the period. Again, no risk. Excuse me. That letter, I want to go back to the letter you read from the July 25th letter on Joint Appendix 671. Yes. I believe you read the part about Siddiqui's death does not relieve your corporate clients from their settlement obligations for your proposition that the settlement agreement was then effective. But you didn't read the first sentence of the letter that says your client signed the settlement agreement, but they have not yet signed the franchise agreements and related documents required to make the settlement effective. That's correct. They believed the settlement agreement was a done deal. Your Honor, we then subsequently sent that immediately. After we received this letter, that's when the franchise agreements were in fact forwarded. So in other words, it shows that my client's willingness to comply with the instructions with the direction given by the appellants, which they did immediately. And then they said, well, now we've sent you the franchise agreements. What do we need to do now to effectuate the performance under the settlement agreement? And that's what they did. We believe, again, that the intent of the settlement agreement and the bargain was that the two stores would operate as the MediCap franchisees for a minimum of three years purchased from Cardinal. My clients have at all times expressed a willingness to do that. Again, the court below was very clear in stating that the issue of performance was not before the court, and that is what we believe is being discussed at this time, is whether my client can perform. And I'm looking at what Judge Berdard said on the joint appendix of 184. He said, I do not know if they can perform or not, but that is not a question that is before the court. And it seems that the appellants are saying they can't perform, but they haven't given my clients the chance to see if they can perform. And if they don't perform, then it would be, we believe, would be a breach under the agreement. But my clients are saying that they can, in fact, perform and intend to perform. And the same thing occurred at the hearing in front of Judge Berdard when he said on joint appendix 185. Now, I have no idea what the long-term capacity over the next three years is of SIDDIQI, SIDDIQI's estate, SIDDIQI's heirs, SIDDIQI's companies, to perform under this contract. I hope they do. But that is not the nub of the issue before us in this dispute. You settled your lawsuit. The court held the Milner evidentiary hearing. There's no issue that the defendants and the plaintiffs executed the documentation. We believe that the plaintiffs are trying to add terms to the agreement, which are totally within their control, things as approvals, things as additional documentation needed to convert. And my clients are willing to do those things. And the agreement, because the agreement is silent on nonessential terms, which we believe they are, should not defeat a valid settlement agreement. This issue of the authority, I don't think there's, there was an evidentiary hearing on that. There's no question that Mr. SIDDIQI was gravely ill. The bills of sale, as noted in the brief, were prepared by a CPA. His deposition was taken. There are things in there that obviously were an error. And I don't think that's a true issue. I mean, there were even things in there with non-compete, I'm a man that's only going to project to live a short period of time. There was no concern of a non-compete. And that the court was correct in that. These issues of questions of having to provide more disclosure documents. Again, a ministerial act. All that the franchisor would have had to do is say we have to provide you with some more disclosure documents, and we would have accepted them, and then we would have signed whatever they wanted to sign. Again, it's all in furtherance of this settlement agreement, which it's obvious that the appellants just don't want to honor. Creditworthiness is not an issue, as I stated, because leave that up to the defendants to perform. If they perform, fine. If they don't perform, they're in breach. But they've clearly stated a means in which their performance was actually guaranteed. And as the court was questioned, this company has survived all these number of years. Do we have a little time for rebuttal, Your Honor, afterward? Right now. Can I continue on? You have whatever time remains on the clock. And I will use a little bit to sum up. Again, Your Honors, we state that the executive franchise documents were returned. And if there was no further action required, they should have told us. As far as the risk, we discussed that. I'm sorry, Your Honor. You don't have to use up the remainder if you don't wish to. That would be it. Thank you, Your Honor. Thank you very much. Mr. O'Byrne, it's hard for me not to come away from this record thinking that matters were proceeding swimmingly as long as Mr. Siddiqui was alive. And when there was the transfer to Mr. Yusuf, MSI decided that it did not want to do business with him. Well, that's absolutely the case, Your Honor. And, in fact, it appears as though you've already predetermined that he will not qualify. Well, but that's the case. So, Your Honor, just so you have the picture here. Oh, I understand why you have issues with Mr. Yusuf. That's very clear. Okay. But the problem is where we are now. Right. Is it almost appears as though it simply isn't possible because a lot of the documents, the credit applications, et cetera, are at your discretion, that it will simply not be possible. Indeed. So it's hard not to understand why the district court felt a little frustrated at what appears to be an exercise in futility. I understand. And I think that's exactly right. And that's why we said this settlement agreement, once Mr. Siddiqi died and once Mr. Yusuf, of all people, shows up as the guy who's now claiming to own these stores, after we've been fighting with him for so long, when we have a settlement agreement but we don't have any of the underlying agreements to convert the stores. Which you have already decided Mr. Yusuf will not be able to complete. Correct. I think that's exactly right. If someone other than Mr. Yusuf had stepped into the picture, would we be here today? Well, it depends. I mean, it had to be somebody creditworthy. That's what the letter that I think Judge Thacker read said, that we're looking for not only the franchise agreement but other documents as well, which goes to, I think, another issue that Judge Berdar overlooked, that it's not just the franchise agreement. But, no, it had to be somebody creditworthy. Your determination that Mr. Yusuf isn't creditworthy is based on the fact that you do not believe him to be a trustworthy person. It doesn't appear to be an objective determination because he has, in fact, adequate credit to obtain inventory and continue the operation of the business. There is no evidence in the record to suggest that, Your Honor. Again, I think the only evidence in the record there is that he's using Mr. Siddiqui's credit to get where he is today. He didn't get there on his own credit at all, Your Honor. There's no record. There's no evidence in the record to suggest that. Counsel, this case, this relationship between your client and Mr. Siddiqui and Mr. Yusuf smells a bit of fraud. How can we determine, despite the stipulation of the parties that there was a settlement, that there even was a settlement given the history your client had with Mr. Yusuf, the events that transpired around and after the signing of the settlement and release agreement? Trier, in fact, could find that Mr. Siddiqui never intended to follow up on his obligation to complete the terms of the contract. And in that case, how can there have been a meeting of the minds for there to even be a settlement at the first basic step? Your Honor, I think you're on to something here. I think there is a decent chance that we were defrauded into this settlement agreement by Mr. Siddiqui. Whether I can prove that down the road is a whole other issue, but I think that's a very valid point. Proceeding from that assumption, what is the point of remanding to the district court to find, as a matter of fact, whether the conversion documents were completed to your satisfaction when you have already decided that they can never be completed to your satisfaction by Mr. Yusuf? We were prepared to present the evidence to the judge to suggest that the next step is, Judge, this settlement cannot be effectuated. What has to happen is we just have to try the underlying case. And the judge went down this Milner route, which I think is appropriate, but I think Milner and Wood suggest that the court has to roll up its sleeves and can't just look at a document that says settlement agreement signed by the parties and say you've settled your case. What Wood and Milner talk about is that you have to read the document and the court has to get in and understand the terms of the document to see if they apply. And this is, as Judge Thacker pointed out, and I think as you pointed out, this is a Rule 56C case. What's the summary judgment evidence of the terms of that settlement agreement? Has there been evidence before the district court to kick in that would warrant the dismissal and the release of the claims? And on a summary judgment level, I don't think there's a question here at all, Your Honor, as to how that came out. Judge Berdar issued a one-and-a-half-page order, a memorandum opinion, that didn't discuss any of the factual disputes that we've talked about here today. His frustration was apparent. Absolutely. Absolutely. Our frustration is apparent as well. And Mr. Silberger, we understand that that's where we're at. Thank you very much, Mr. O'Brien. Thank you. Thank you.
judges: Allyson K. Duncan, Stephanie D. Thacker, Gina M. Groh